Good morning. Good morning. Good morning, Your Honors. May it please the Court, Mary Ann Dugan for the appellant, Plaintiff Western Radio. Your Honors, as you know from reading the briefs, there are three issues on appeal. The first issue is whether the rural exemption in the Telecommunications Act can be waived. And within that, there are obviously several sub issues. And the second issue is whether the Court has jurisdiction over enforcing interim arrangements between telecommunications carriers. The third issue is whether Western Radio exhausted, properly exhausted, its administrative remedies on the good faith claim, the claim for failure to negotiate in good faith. Unless Your Honors have a preference, I was going to start with the good faith claim. Thank you. The as we pointed out in the briefs, it's fairly recently that there has been, it has been clear that, number one, the courts, at least in the Ninth Circuit, that the courts have jurisdiction, the Federal courts have jurisdiction over a good faith negotiation claim, and number two, that the plaintiff must first exhaust its remedies at the State Utilities Commission. There are no, to our knowledge, any, no State rules on how to do this in Oregon. Well, did the PUC rule on that issue? It did not, Your Honor. It said that a proper complaint had not been filed. Is that correct? Correct, Your Honor. So how could it possibly have been exhausted? Because it would have been futile since there are no procedures on how to do this, and Western Radio squarely presented the open issue to the PUC, invoking the rules that the PUC has written about how to present an arbitration petition, and the defendants have invoked 47 U.S.C. 252-B-4-B. That statute does not provide for dismissal in this type of situation and requiring Western Radio to go back to square one. And what that statute says is that the PUC, or the State Commission, may require either party to provide, quote, such information as may be necessary for the State Commission to reach a decision on the unresolved issues. If any party refuses or fails unreasonably to respond on a timely basis to any reasonable request from the State Commission, then the State Commission may proceed on the basis of the best information available to, from whatever source derived. First, there was no request for further information from the PUC. It simply vaguely stated, well, you haven't presented this correctly to us, and we're dismissing it. Without prejudice. Well, without prejudice. Yeah, I was sort of puzzled why you didn't then go back and refile it as they had told you to do. Number one, we, it's entirely unclear what more could have been done beyond what was done in the first place. Well, they said you just gave them two agreements. They wanted you to specify what the issues were and each party's respective positions, and you didn't, you didn't do that. That would be the appropriate procedure to clarify the open issues about the ICA, the interconnection agreement, if the issue was what ICA is appropriate. Here, the issue was that CenturyTel has failed to negotiate in good faith, and Western Radio squarely presented that in its filings with the PUC. CenturyTel responded and adamantly denied that it had failed to negotiate in good faith. The PUC then had the opportunity to hold a hearing, to ask for information, to have the parties file briefs, to take testimony. None of that occurred. There's no indication that it was unclear what was meant by failure to negotiate in good faith. If that, if the PUC had said, you know, we need more information about what you mean by this, then they would have been complying with 47 U.S.C. 252. So what you're really arguing then is we don't have to do what we're supposed to do to bring this petition. We just have to file for anything we want, and as long as the other side knows what we want, we can adequately ignore that we were supposed to state all of the unresolved issues, ignore the party's position on these issues, even though we were invited many times to do it? No, Your Honor, absolutely not. If you look at our opening brief, we exhaustively laid out the issues for the PUC, and the PUC never said, we don't understand what you mean by A, B, or C. We did lay out the open issues. Well, what did the PUC say? They said you didn't file in a fashion it was prepared to deal with. The PUC, with all due respect, Your Honor, I think the PUC was confused because they haven't dealt with these good faith negotiation claims. They don't have any rules on how to do it. So they were confused. Does that constitute exhaustion? Since they did not ask for clarification or additional information, which is the procedure laid out in the Telecommunications Act, and since it would clearly be futile to present yet another petition, which was the case. Why would it be futile if they made a point of dismissing without prejudice? It makes you the judge, not the PUC, of what's inadequate filing. And I'm not sure why we should accept you being the judge as opposed to the PUC. We are not trying to be the judge, Your Honor. But you're the one that said it's futile. They didn't say it's futile. They said it's dismissed without prejudice, giving you an opportunity to file again. The PUC at no time stated what information was missing. That's not the question that I'm posing. The question I'm posing is you're deciding in this instance what's necessary and what's missing, and you're complaining the PUC didn't tell you what's missing. What the PUC did was dismiss without prejudice and invite a new filing. It's up to you to figure out what it is. If you can't figure out what it is, that doesn't mean it's futile. It does, Your Honor, because it has turned into a game of 20 questions. Well, this is the first time. Maybe if they'd stonewalled you five times, they'd be a little more sympathetic. But I'm really kind of mystified as to why we should think one rejection by a dismissal without prejudice constitutes futility. As the Department of Justice pointed out in its 28J letter, Western Radio and Autotel, its sister company, have actually been through this quite a few times. And it has happened quite a few times, where Western Radio is attempting to present a good faith negotiation claim to the state commissions, is not told what procedure to follow, what is wrong, what is missing. And the Telecommunications Act places a high premium on moving these things through the state utilities commissions expediently and quickly. There are strict deadlines. And the point of that is to make sure that companies do interconnect on an expedient basis in the interest of serving the public through competition. I'm puzzled why you said they didn't tell you what was wrong with your filing. I'm looking at the order of 12809, where on page 2 they tell you what in their view is wrong with your filing. I'm sorry, what page? It's page 2 of their order dated 128, 2009, Disposition, Petition for Arbitration, Dismissed Without Prejudice. It's a three-page order. Second page, they tell you what's wrong and invite you to do it again. Why do you say they didn't tell you what to do? I don't see if you have an ER page number. It's ER 98979899. The order dismissing your ---- Your Honor, with due respect, this statement does not advise Western Radio what is missing from the case. It says, by Western's own admission, it doesn't set forth all the unresolved issues, nor does it state the parties' positions on the unresolved issues. It does not elucidate what issues have been discussed and resolved by the parties. Western submitted a proposed interconnection agreement on its own, indicates that the positions of CenturyTel are unknown, and requests that we drop the other one. And then it tells you, I mean, I don't know, they're telling you what's wrong, and the next page they tell you to go ahead and file again and fix it. I don't know why you're confused about that. Well, I think if you read the actual petition and the response, with all due respect, the PUC is incorrect. And I think, again, the PUC is looking at this in the framework of what they're used to, which is two interconnection agreements that are different from each other that are being arbitrated, and it is the Petitioner's duty then to list all of the open issues, quote, unquote, about that interconnection agreement, which can get highly technical. Here we have a simpler and yet more confusing issue for the PUC, apparently, which is a statement that CenturyTel has failed to negotiate in good faith. The CenturyTel, in its response, did not say, you know, you haven't you haven't explained what the open issues are, you haven't listed what happened. And under 252b-4, the proper procedure would have been for the PUC to ask for more information and be specific about that. Tell me, let me change subjects for a second. Please tell me why it's not moot with respect to whether it can be waived case-by-case. The rural exemption. Yes, Your Honor. First, as you know, the defendant's burden, it's a heavy burden to prove mootness. Here, the PUC still could comply with its duty to terminate the rural exemption once and for all. It's unclear why this can't be done. And it would clarify issues as far as past behavior by CenturyTel. Well, CenturyTel entered into a binding agreement at the FCC that says they're not going to invoke the rural exemption. For future interconnections. Right. And so Western is dealing with a past --with past negotiations, which are --which came before the merger. And therefore, it's entirely unclear that CenturyTel could never raise the rural exemption for its past behavior, because at the time, it had not done the merger and it still had its rural exemption. And it still has its rural exemption. It's just telling FCC it won't invoke it. This makes no sense. Under the Telecommunications Act, it's clear that the State commission is supposed to, shall, terminate the rural exemption within 120 days if three conditions are met. And they have not done so. And the PUC's duty is certainly not moot. But in effect, your opposition said they would not raise the exemption as to this particular negotiation or as to this particular situation. So as to your particular client, the exemption's out. Why is there a problem? There are past. There are other small companies that CenturyTel has been --- Well, but you don't have the right to bargain for other carriers. Well, that's a different issue, Your Honor. That's an entirely different issue. The issue of mootness doesn't depend on who's raising it. Oh, it does. It's moot as to your client. It may be an issue for somebody else, but as to your client, this case in controversy, how is it not moot? The PUC has a duty not just to Western Radio. It has a duty under the Telecommunications Act to revoke the rural exemption. We're not adjudicating for everybody else. We're adjudicating for this case brought by your client. How is it not moot for your client? Your Honor, it clearly falls within the capable of repetition exception to mootness. When somebody comes before the Court whose own wrong has been righted or the time has elapsed, they were in jail and they got out, for example, they are still allowed to argue against mootness if it is capable of repetition. As I understand the capable of repetition, it has to do with the capable of repetition for your client. They say they're not going to have the exemption as to your client in this situation. Now we have their representation of their parent to the FCC. We're not going to have this exemption in the future at all as to this client. They're saying as to any client and now you're saying the case isn't moot because you want to provide a bargaining for other carriers? And for the public, Your Honor. But we really don't have the other carriers in the public in front of us. Your Honor, the capable of repetition exception clearly benefits the general public as in Roe v. Wade, all kinds of situations where this individual Well, but just a minute, even in Roe v. Wade, the public being involved is not as similar to this. We are talking about an arrangement between your client and another client and we're talking about whether the exemption applies in that arrangement. And they say they're not going to have it apply. They don't say they're not going to have it apply for other carriers, but other carriers aren't in front of us. And they don't say anything about the public because the public is represented, if at all, in your estimation, as I understand it, by you. And they're not going to have the exemption as to that. Well, the PUC's duty goes much, much further than this in this situation. It is going to come up again. It's likely to come up again. If the PUC is presented with this and thinks it can just avoid handling something that is a duty on their part, if the carrier just decides to say they're going to waive it, this provision must have some meaning. And this is a good opportunity to give it meaning. You have a minute left. Did you want to reserve that for rebuttal? I would. Thank you. Thank you, Ms. Duggan. See, we have two folks sitting over there. Have you folks decided how you're going to divide up your time? Yes. Yes, Your Honor. We'd like to split it evenly. All right. Excuse me. Pardon me. Estella, would you mind putting 7 and a half minutes on the clock, please? 7, 7.30, OK. OK, thank you. Thank you. Good morning. May it please the Court. I'm Richard Finnegan, representing CenturyTel of Eastern Oregon, Inc., DBA CenturyLink. On the issue of the failure to negotiate in good faith, I'm not going to go through the argument I had originally planned, but I'll deal with the issues that have been raised here this morning by the argument of Ms. Duggan and the questions to her. The idea of futility, I have two points on that. One is that the statute itself, 47 U.S.C. 252b2a, clearly tells a party what they have to include in a petition for arbitration. It's the enlisting of the unresolved issues, the positions of the parties on those unresolved issues, and enlisting of issues that have been resolved. That's in the statute. That's also in the commission's, the Oregon commission's regulations. So what needs to be included is clear. Then, as Your Honor pointed out, in one of the many offers that the Oregon commission made to Western Radio to resubmit its petition, they told Western Radio that Western Radio may resubmit a petition for arbitration. A new petition for arbitration should clearly identify, one, the unresolved issues, and, two, the positions of Western and CenturyTel on each unresolved issue. That's at ER 99. So the idea that's futile just doesn't hold water. The commission, the FCC, or, excuse me, Congress, the commission and its rules and the commission and its order involving Western Radio told Western Radio what it needed to do, and Western Radio chose not to do that. Kennedy. Suppose you have a situation where one party proposes an agreement and the other party simply doesn't respond or responds in a nonresponsive fashion, doesn't talk about the terms of the proposed agreement, just elects not to communicate any substantive positions. What should the first party do in that circumstance? The party would file, as of the 135th day under Section 252, after filing its request, bonafide request for negotiation, would file a petition for arbitration, would lay out the fact that it had presented issues A, B, C, and D, that the party on the other side, can it identify what the issues are, its proposed agreement? Right. The other side doesn't respond, so it doesn't object to any particular terms. How is it you can identify what the issues in dispute would be? To my mind, Your Honor, what would need to be provided is here is a list of issues that we presented in our proposed interconnection agreement. An interconnection agreement are relatively standard in terms of how they're laid out. They could say that, you know, we asked for unbundled network elements. We got the response on their side, no response. We requested resale at a discount. Response, no response. The position of the ILAC, the incumbent company, was not to respond. So all you needed to do was identify the issues that the competitive company wanted to raise and point out to the commission that on each of those there had been no response. That would be the way to do it if that was the situation. And I don't want to go into things that might be correct. Roberts. Assume. I understand your dispute that that's what happened here. But I want to because Western's position appears to be, look, we gave the commission our proposed agreement, and you're telling me that what, if Western's assumption is correct, what it should have done is specified what the items of dispute would have been between that agreement and what they anticipated coming back from Central. So from Central. By simply filing an agreement and saying here it is, the commission had no way of knowing, and as they point out in one of their orders, we don't know what the issue is because of the way in which it was presented. And they further said they didn't have the authority to define the issues, correct? That's correct. Under Section 252, the parties are required to define the issue. On the issue of the rural exemption, it was the idea that it was capable of repetition was raised. I mean, as Your Honor pointed out, CenturyLink's parent has entered into a binding agreement with the FCC. If it raises it, even if it raises it in this proceeding, if it were remanded to the commission, it would be in violation of that order. It would be subject to hundreds of thousands, potentially hundreds of thousands or even millions of dollars of fines. So the concept that it's capable of repetition in this proceeding or in any proceeding just doesn't have any basis in fact. The public interest argument that was raised, quite frankly, is a new argument. We heard it for the first time today, but it's clear on its face that the issue is moot and we should move forward. The third issue is the issue of the informal interconnection arrangement. As we point out in our briefing, this is a type of arrangement that predates the 96 Act that gave commissions authority over interconnection. It's under 47 CFR 22.11A, subsection A. The FCC has said it's the proper venue for complaints about informal interconnection arrangements of this nature, not the state commission. So the state commission was correct and the district court was correct that the commission did not have jurisdiction to hear a complaint about this type of informal interconnection arrangement that predates the 1996 Act, which enacted section 252 on state commission authority over interconnection agreements. So thank you, and if there are any other questions, otherwise that concludes my presentation. Mr. Finnegan, thank you. Good morning, Your Honor. My name is Mike Warrick. I'm here for the commission. Mr. Finnegan and I have split our time. I've heard your questions to Ms. Dugan and Western Radio, and I'm here to answer any questions you have. I can go through my prepared remarks if you'd like to. As far as the good faith claim, the PUC was not confused about what was happening. They've done this many, many times. They know what an adequate petition looks like. Western Radio, in fact, has filed adequate petitions in the past in other proceedings, other cases. The commission was trying to help Western Radio, trying to point out what was missing. They cannot just take two interconnection agreements being presented by each side and basically be told to pick one. The PUC doesn't have authority to do that. We invited Western Radio to refile with no prejudice, and they chose to go to court instead. We do have procedural rules. Has Western Radio filed prior petitions? Not against CenturyTel, but against other carriers. Not against, but in trying to get connection agreements with other carriers. They have filed previous petitions with the commission? Yes. So they understand the procedure? Yes. In fact, there was a Western Radio v. Quest in the PUC case. Yeah, well, I saw Western Radio v. Quest, which we had seen ourselves. Yes, you have. And that was the same carrier, same attorney. They knew how to do it. And we invited them to do so, and for whatever reason, they chose to go to court instead. What's the status of things now? Are you still folks operating under the informal agreement? I'm sorry? What's the status? Are they operating under the informal agreement, the two companies? Yes, according to Mr. Finnegan, there was an informal arrangement that predated the act. Is that still the status quo? As far as I know it is, yes. That was done under a part of the act that the commission does not enforce. I'm not saying it was done improperly or not. It's just not something we deal with. We deal with formal requests for interconnection under Section 252. We have no authority under Section 252 to enforce an informal arrangement. No authority under state law to do so either. So that could go on indefinitely, and if they want to do something more formal, they can invoke it again. Is that correct? I would gladly cede some of my time to Mr. Finnegan. He's more of the expert in that area, but I believe so. And if there's complaints that need to be brought for an informal arrangement under that part of the act, they would go to the FCC, is my understanding. This issue was not raised before the PUC. We're just trying to figure out how this thing works. Yeah, I think that's my understanding as well, Your Honor. But I imagine Ms. Dugan or Mr. Finnegan can widen further on that. Gotcha. I don't know if you'd like to hear more about the waiver of the oral exemption. We agree with Mr. Finnegan. We fully briefed it with Your Honor's questions. As far as we can tell, it's moot. The commitment was binding before the FCC. As the district court pointed out, acceptance of a commitment not to raise the exemption is, in essence, a type of waiver. So they seem to agree waivers are appropriate. There's a federal rule that says you can do waivers on a case-by-case basis. That's what the Commission was prepared to accept here. And then it was superseded by other events with the commitment to the FCC. So we are not troubled by the idea of a waiver of the oral exemption. I think it makes sense for administrative efficiency and administrative economy. I have more I could say, but I'd be happy to answer any questions if you have any. I have two. Thank you, Mr. Reimer. Thank you. Ms. Dugan, back to you. You've got about a minute left. Thank you, Your Honor. You know, I will point out that Western Radio is, to my knowledge, the only small company that has pushed this issue, this good-faith negotiation issue, and we are trying to figure out procedurally how this is done. And that's one reason that we didn't just go file another petition, start the clock again, take more time trying to literally play 20 questions with the PUC. We want a ruling from this Court on this issue, not just for our purposes, but for other carriers. And if you look at what... Your problem is the same problem that we have in Idaho when the PUC is brought into court, and that is when we have the idea the PUC is supposed to give the first verse, by you just suggesting, well, I don't have to comply with what I had to do there, and I just go to federal court, then you somehow get our attention Our worry is that we still are bound by the law and we can't give the first verse without having the PUC do something with it, because it says, even in your case of Western Radio Services v. Quest, it gives the Court the benefit of the Commission's expertise before confronting the claim. I see I'm out of time. May I respond? Sure. Thank you, Your Honors. This Court, in its wisdom, sent this whole issue back to the State Commissions in Western Radio v. Quest. I would submit, Your Honors, that, frankly, the PUC has not demonstrated that it has any special expertise in trying to figure out whether people have negotiated or carriers have negotiated in good faith. Here, in ER 71, Centurytel made crystal clear that it was not interested in negotiating this because it's concerned that if it makes any changes to its take-it-or-leave-it contract of adhesion, that any small carrier can then invoke that modified ICA. And they said, we are not going to we do not want to change this. And that was the issue that was before the PUC. It was clearly before the PUC, and we presented it clearly. Thank you, Your Honors. Thank you, Ms. Dugan. Mr. Finnegan, Mr. Weyrich, thank you, gentlemen. The case just argued is submitted. Good morning. 11-35707 Grimes v. Astru and 11-35923 United States v. $11,500 in U.S. currency are submitted on the briefs. The next case to be argued is 11-35833 Phillips v. Puckett.
judges: Silverman, Clifton, Smith